NOT FOR PUBLICATION (Doc. Nos. 2, 6)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| WALTER BERGLUND, | : |
| Plaintiff, | : Civil No. 14-1972 (RBK/AMD) |
| v. | : |
| | : **OPINION** |
| GRAY et al., | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

Before the Court is the motion of Stacy Gray, Rachel Green, Linda Rosser, and the Deptford Township Board of Education ("Board") (collectively "Defendants") to dismiss the Complaint of Walter Berglund ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Also before the Court is Plaintiff's cross motion for leave to file an amended complaint. For the reasons set forth below, Defendants' motion to dismiss is **DENIED**, and Plaintiff's motion to amend his Complaint is **GRANTED**.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff's suit arises from his alleged unlawful termination. Plaintiff was hired by the Board, a public entity, as the Supervisor of Buildings and Grounds for the Deptford Township School District. (Compl. ¶ 10.)  He began employment on December 3, 2012. (Id.)  Prior to that, from April 2008 to May 23, 2012, Plaintiff served as a member of the Board. (Id. ¶ 8.)  Plaintiff contends that he met the expectations of his

job duties. (Id. ¶ 12.) During the course of fulfilling his duties as Supervisor of Buildings and Grounds, Plaintiff suspended an employee for two days, on January 7, 2014, due to the employee's misconduct. (Id. ¶ 23.) Said employee is engaged to be married to the sister of one of the individual Defendants. (Id. ¶ 17.) Prior to the employee's suspension, Plaintiff alleges that this employee made statements to coworkers alluding to his immunity from repercussions for misconduct due to his connections to the Board Member. (Proposed Amended Complaint ("Am. Compl.") ¶ 24.) Plaintiff made these comments known to the Board, and objected to the employee's immunity to discipline based on the employee's personal connections. (Id. ¶ 25.) Plaintiff alleges that the Board affirmed the employee's misconduct by not supporting his requests to impose disciplinary measures on the employee. (Id. ¶¶ 27-28.)

On the evening of January 7, 2014, the same day of the employee's suspension, Defendant Rosser made a motion at the Board's regular meeting to replace Plaintiff as Supervisor of Buildings and Grounds. (Compl. ¶ 24.) The motion was made during an open public session portion of the meeting, without advance notice to Plaintiff. (Id. ¶¶ 25-26.) No action was taken that day, but at the Board's next meeting on January 28, 2014, the Board voted in favor of replacing Plaintiff. (Id. ¶ 28.) Specifically, Defendants Gray, Green, and Rosser all voted in favor of this action. (Id. ¶ 29.) In response to the Board's posting for candidates for this job, the Plaintiff applied for and was interviewed by the Superintendent and the Business Administrator of the Board. (Am. Compl. ¶¶ 42-43.) Thereafter, the Superintendent and Business Administrator recommended that Plaintiff be appointed to the position after his contract was to expire on July 1, 2014. (Id. ¶¶ 41, 44.) The Board refused to appoint Plaintiff to the position.

(Id. ¶ 45.)  Plaintiff alleges that he would sustain pecuniary damages, including lost wages, due to the actions of Defendants.  (Id. ¶ 46.)

Plaintiff also alleges that Defendants violated a custom at the School District that entitles employees to a stipend for performing the regular duties of another employee in addition to their own.  (Compl. ¶¶ 31-32.)  Plaintiff contends that he will have to perform the duties of the Assistant Building and Grounds Supervisor while that employee is out of work for four months, but that his request for a stipend was rejected by Defendants.  (Id. ¶¶ 33-34.)

Plaintiff alleges further that the actions of Defendants in denying him a stipend, moving to terminate him, and refusing to appoint him as Supervisor of Building and Grounds, were done on account of his political associations with the Democratic Party and former Board members.  (Am. Compl. ¶ 56.)  When Plaintiff was a Board member, he was a registered Democrat and also worked as a campaign manager.  (Id. ¶ 9.)  He also served with other Board members who were registered Democrats, and associated with them in making Board decisions, "some of which at the time displeased the individual defendants who were either private citizens or Board members in a minority." (Id. ¶ 10.)  He alleges that the initial decision to appoint him as Supervisor of Buildings and Grounds was made by a majority of Board members who had associated with him when he was a Board member.  (Id. ¶ 13.)  As their positions are that of elected public officials, Defendants Gray, Green, and Rosser had campaigned that if elected they would remove both Democratic Party politics from influencing the Board, and any practice of former Board members obtaining positions on account of their prior associations with Board members.  (Id. ¶ 16.)  Plaintiff alleges that Defendants stated that his political

associations and former associations with Board members are the reason he obtained his position, and by virtue of such associations he should be removed.  (Id. ¶ 17.)

On March 7, 2014, Plaintiff filed suit in the Superior Court of New Jersey, Gloucester County, alleging three counts: (1) violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-3; (2) violation of Plaintiff's rights under the doctrine of "Rice Notification;" and (3) violation of his First Amendment rights to political association pursuant to 42 U.S.C. § 1983.  (Compl. ¶¶ 38-49.)  On March 28, 2014, Defendants filed a notice of removal pursuant to 28 U.S.C. § 1446(b) stating that this Court had original jurisdiction pursuant to 28 U.S.C. § 1331.  (Doc. No. 1.)  On April 11, 2014, Defendants filed this motion to dismiss.  (Doc. No. 2.)  In response, Plaintiff filed a cross motion for leave to file an Amended Complaint, including a proposed Amended Complaint, as well as an opposition to Defendant's motion to dismiss.  (Doc. No. 6.)  Plaintiff's proposed Amended Complaint includes the same counts, but adds factual allegations in response to Defendants' motion.  Defendants oppose the motion to amend, arguing that the amendment would be futile.  (Defs.' Reply Br. 1.)

## II.     LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

A district court may treat a party's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) as either a facial or factual challenge to the court's jurisdiction. Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  A facial challenge is one in which a defendant argues "that the allegations on the face of the complaint, taken as true, are insufficient to invoke the court's jurisdiction." Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 & n.4 (3d Cir. 2002).  "In reviewing a facial

attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould, 220 F.3d at 176 (citing PBGC v. White, 998 F.2d 1192, 1196 (3d Cir. 1993)).

### B. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its

5

judicial experience and common sense." Iqbal, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

### C. Motion to Amend

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court *must* permit a curative amendment unless such an amendment would be inequitable or futile." Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3d Cir. 2010) (internal citation and quotation omitted; emphasis added). However, the rule is not absolute; leave to amend is inappropriate where it would cause undue delay, the amendment is motivated by bad faith or a dilatory motive, the amendment would cause prejudice, or the amendment is futile. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Id.

## III. DISCUSSION

Plaintiff moves to amend his Complaint to add factual allegations that address some of the asserted pleading deficiencies raised in Defendants' motion to dismiss. Defendant opposes the motion, arguing that the amendment is futile. For the reasons discussed below, Defendants' futility arguments fail. This Court will consider the Plaintiff's proposed Amended Complaint in analyzing Defendants' motion to dismiss.

### A. Section 1983 Claims – Third Count

Defendants move to dismiss Plaintiff's § 1983 complaint based on lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). "When a motion under Rule 12 is based on more than one ground, the court

should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." In re Corestates Trust Fee Litig., 837 F. Supp. 104, 105 (E.D. Pa. 1993).

### 1. Subject Matter Jurisdiction

Defendants argue that this Court lacks subject-matter jurisdiction because, insofar as the claims relate to whether Plaintiff was entitled to a stipend for performing extra duties, these claims are a matter more properly before the Commissioner of Education. (Defs.' Br. 6.) The Court first notes that Defendants are the parties that removed the case to Federal Court under 28 U.S.C. § 1331, citing Plaintiff's § 1983 claim as the basis for federal subject matter jurisdiction. (Doc. No. 1.) Now that they are in federal court, Defendants attempt to argue that because the § 1983 claim requires resolution as to whether Plaintiff was entitled to a stipend, an issue "within the special competence of an administrative agency," that this Court must defer to the Commissioner. (Defs.' Br. 6-7.) Defendants argue that whether Plaintiff was inappropriately denied the stipend requires the interpretation of "school laws" such as N.J.S.A. 18A:1-1 et seq., which is within the "special purview" of the Commissioner of Education. (Id. at 8.)

This Court does not agree. First, this Court is not aware of any New Jersey law requiring Plaintiff to bring such claims before the Commissioner of Education. Second, the Supreme Court has held that exhaustion of administrative remedies is not a condition precedent to filing a § 1983 action. Patsy v. Florida Bd. of Regents, 457 U.S. 496 (1982). Finally, Plaintiff's original complaint alleges a violation of § 1983 when Defendants denied him of a stipend and moved to terminate him. (Compl. ¶ 45.) However, Plaintiff's proposed Amended Complaint adds factual allegations resulting in the

additional injury of refusing to appoint Plaintiff to his position as of July 1, 2014, resulting in a job loss. (Am. Compl. ¶ 56.) Therefore, the allegations from the face of the Amended Complaint, taken as true, would support a finding that his Court has subject matter jurisdiction.

### 2. Failure to State a Claim

Defendants argue that Plaintiff's complaint does not provide sufficient facts as to what constituted the political association claim. (Defs.' Br. 15-16.) Specifically, the Complaint did not explain what, if any, "different viewpoint[s] that [Plaintiff] has versus the other board members." (Id.) The proposed Amended Complaint adds several paragraphs pertaining to this particular issue. The Court therefore rejects Defendants' contention that the Amended Complaint is futile in this regard, and denies Defendants' 12(b)(6) motion for the § 1983 claim.

To recover under § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). "Acting under color of state law requires that the defendant . . . have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. (citations omitted). Claims for discrimination based on political association under § 1983 require the plaintiff to prove the following: (1) he was employed for a public agency in a position that does not require political affiliation; (2) he maintained an affiliation with a political party; and (3) this political affiliation was a substantial or motivating factor in the adverse employment decision. Robertson v. Fiore, 62 F.3d 596, 599 (3d Cir. 1995).

Plaintiff's Amended Complaint plausibly gives rise to entitlement to relief under § 1983. First, Plaintiff was employed by the Board, a public agency, in a position that did not require political affiliation. Second, the factual allegations that he was a registered Democrat, a campaign manager, and that he maintained this affiliation while he was a member of the Board satisfy the second element. Finally, Defendants stated that Plaintiff should be removed from his position because of his political associations, which allegedly precipitated the adverse employment actions. Plaintiff has thus stated a plausible claim under § 1983 in his proposed Amended Complaint.

### a. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. The doctrine of qualified immunity "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This doctrine "balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Because qualified immunity provides complete immunity from suit, not merely a defense to liability, questions surrounding its applicability should be resolved at the earliest possible stage of the litigation. Id.; Saucier v. Katz, 533 U.S. 194, 200–201 (2001).

In order to overcome an assertion of qualified immunity, a plaintiff must satisfy a two-part test. The court must first "decide whether the facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation." Couden v. Duffy, 446

F.3d 483, 492 (3d Cir. 2006); Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (citing Saucier, 533 U.S. at 201). If the Court determines that a constitutional violation did occur, it must then consider "whether the constitutional right in question was clearly established." Id. An official is deprived the protection of qualified immunity only if her conduct both violated the Constitution and could not have been considered lawful by any reasonable person in her position. See Curley v. Klem, 499 F.3d 199, 207 (3d Cir.2007).

As discussed already, Plaintiff's Amended Complaint sets forth a plausible cause of action under § 1983. Defendants' disputation that "Plaintiff has not provided this Court any information as to the basis of his political association claim," (Defs.' Br. 17), has been cured by Plaintiff's proposed Amended Complaint. The Amended Complaint, taken in the light most favorable to the plaintiff, demonstrates a constitutional violation of Plaintiff's First Amendment rights, on which the law is clearly established. See Elrod v. Burns, 427 U.S. 347 (1976) and Branti v. Finkel, 445 U.S. 507 (1980) (holding that the First Amendment forbids government officials from discharging public employees for not supporting the political party in power, unless party affiliation is an appropriate requirement for the position involved); see also Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990) (finding that promotion, transfer, recall, and hiring decisions, even where the employee has no entitlement to the position, cannot be based on party affiliation). Thus, the Court finds that Defendants are not entitled to qualified immunity.

### b. Liability of Individual Defendants

Defendants argue that the individual defendants Gray, Green, and Rosser cannot be sued because Plaintiff has failed to allege any specific actions of these individuals that would subject them to liability. (Defs.' Br. 18.) Defendants rely on Gerber v. Springfield

Bd. of Educ., which held that a school board "may be liable to suit as an entity, but in the absence of individual conduct that results in liability, the Board members are shielded from suit." 744 A.2d 670, 679 (N.J. Super. Ct. App. Div. 2000). Indeed, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted).

Plaintiff's Amended Complaint alleges that all three individual defendants specifically campaigned that if elected they would remove both Democratic Party politics from influencing the Board, and any practice of former Board members obtaining positions on account of their prior associations with Board members. Furthermore, Plaintiff alleges that these defendants have stated that Plaintiff should be removed from his position due to his political associations. Finally, after defendant Rosser made a motion to replace Plaintiff, the three individual defendants voted in favor of the motion. The Court finds that these allegations against the individual defendants comprise individual conduct that could subject them to liability.

### B.  Rice Notification Violation – Second Count

Plaintiff alleges that Defendants discussed his employment status without giving him a "Rice Notification," depriving him of certain "rights and opportunities." (Compl. ¶ 42.) Thus Plaintiff appears to be alleging a violation of the New Jersey Open Public Meetings Act, N.J.S.A. 10:4-1 et seq. Plaintiff's proposed Amended Complaint adds that Defendants' public discussion of his employment status invaded his privacy. (Am.

Compl. ¶ 53.) The Court finds that Plaintiff has sufficiently pled this Count to survive Defendants' motion to dismiss.

New Jersey's Open Public Meetings Act mandates that meetings of public bodies must generally be conducted in public. N.J. Stat. Ann. § 10:4-1 et seq. However, the statute provides an exception that allows for matters involving personnel decisions to be conducted in private sessions "unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a public meeting." Id. § 10:4-12(b)(8). This provision has been interpreted to require a "Rice Notification" to affected employees. See Rice v. Union Cnty. Reg'l High Sch. Bd. of Educ., 382 A.2d 386 (N.J. Super. Ct. App. Div. 1977). Such notification requires that the employees "have reasonable advance notice so as to enable them to (1) make a decision on whether they desire a public discussion and (2) prepare and present an appropriate request in writing." Id. at 390.

Even though Rice Notifications arose in the context of allowing employees to waive their rights to a private hearing on personnel matters, the Court finds that the requirement is applicable to inverse situations such as Plaintiff's, where matters involving his employment were discussed at a public session that he wished to be private. "It is clear that the sole purpose for the personnel exception is to protect individual privacy." Id. Plaintiff alleges that defendant Rosser made a motion at a public meeting of the Board to replace him, without giving notice to Plaintiff that such a discussion would take place. It is immaterial that no action was taken on the motion made that day. The broad language of the statute allows for a private session for any "matter involving the employment, appointment, termination of employment, terms and conditions of

employment, evaluation of the performance of, promotion, or disciplining" of any employee. N.J. Stat. Ann. § 10:4-12(b)(8). Thus, the Court finds that Plaintiff has pled a sufficient violation of the New Jersey Open Public Meetings Act.[1]

### C. New Jersey Conscientious Employee Protection Act – First Count

The New Jersey Conscientious Employee Protection Act establishes a statutory exception to the general rule that an employer can terminate an at-will employee for any reason. Higgins v. Pascack Valley Hosp., 730 A.2d 327, 334 (N.J. 1999). "The purpose of the CEPA is to 'protect employees who report illegal or unethical work-place activities.'" Id. (citations omitted). CEPA thus protects against "whistle-blowers." The statute provides that an employer may not take any retaliatory action against an employee because an employee:

> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy, or practice of the employer that the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law…; or
> . . . .
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law.

N.J. Stat. Ann. § 34:19-3. To successfully bring a CEPA claim, a plaintiff must show: "(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal

---

[1] The Court notes that Plaintiff's proposed Amended Complaint includes a claim for invasion of privacy under this count. The Court will not address whether this claim survives Defendants' motion to dismiss because the Court finds that the original complaint was sufficient to withstand the motion to dismiss.

connection exists between the whistle-blowing activity and the adverse employment action." Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J. 2003).

Plaintiff alleges that Defendants retaliated against him in response to his having disclosed the misconduct of his employee and objected to the fact that the employee was immune to discipline. (Am. Compl. ¶ 49.) Defendants argue that Plaintiff has not set forth a valid whistleblower claim under N.J.S.A. § 34:19-3 because he has failed to meet the first two elements of the cause of action: Plaintiff has not alleged a "violation of a law, rule or a clear mandate of public policy," and even if he did, a CEPA action cannot lie where a Plaintiff merely performs his job duties in supervising employees. (Defs.' Br. 10-11.) Plaintiff argues that New Jersey Supreme Court precedent, and a decision of the Appellate Division in Lippman v. Ethicon, Inc., 75 A.3d 432 (N.J. Super. Ct. App. Div. 2013), which the supreme court has granted certification to review, defeats Defendants' argument as to the second prong. (Id. 11.) Although this Court disagrees with Plaintiff, we nonetheless find that he has pled a valid CEPA violation.

First, the Court notes that, viewing the complaint in the light most favorable to the Plaintiff, he pled a sufficient violation of existing regulations by complaining that his supervisory role includes a duty to ensure that his employees conduct themselves in conformance with the standards set forth in N.J.A.C. 4A:2-2.3, (Compl. ¶ 15), and that the Board affirmed the employee's misconduct by not supporting the disciplinary measures Plaintiff suggested in order to stay in compliance with these regulations. (Am. Compl. ¶ 28.) The question therefore becomes whether Plaintiff's actions in disclosing the misconduct of his employee and objecting to the fact that the employee was immune to discipline constitute a "whistle-blowing" activity within the meaning of the statute.

The Supreme Court of New Jersey has held that "CEPA prohibits an employer from taking retaliatory action against an employee who has a reasonable basis for objecting to a co-employee's activity, policy, or practice covered by N.J.S.A. 34:19-3." Higgins, 730 A.2d at 338.  Furthermore, in Massarano v. New Jersey Transit, after finding no valid CEPA claim where the plaintiff failed to identify a clear violation of a statute, regulation or public policy, the court further noted that the plaintiff was not a whistle-blower under the statute because "plaintiff was merely doing her job…by reporting her findings and her opinion [to her employer]."  948 A.2d 653, 663 (N.J. Super. Ct. App. Div. 2008).  In Lippman, supra, the court declined to follow Massarano, and found that an employee had performed a whistle-blowing activity where the employee, whose "core function and duty" was to monitor his employer's compliance with the law, objected to his employer's practice of delaying the recall of dangerous defective medical products.  75 A.3d at 451.  Plaintiff argues that, in light of Higgins, the supreme court will affirm Lippman, and thus he has pled a valid CEPA cause of action.

This Court is not as confident as Plaintiff in the outcome of the supreme court's review.  Although the Lippman court declined to interpret Massarano as categorically denying a CEPA cause of action where the employee's conduct that spurred the alleged retaliation is part of his job responsibilities, the court's ruling pertained specifically to employees who perform "watchdog" functions.  "If an individual's job is to protect the public from exposure to dangerous defective medical products, CEPA does not permit the employer to retaliate against that individual because of his performance of duties in good faith, and consistent with the job description." Lippman, 75 A.3d at 451.  The court went on to "distill" its holding in the case, explaining how to establish a prima facie cause of

15

action specifically for employees who perform watchdog functions. Id. Lippman therefore did not categorically reject the holding in Massarano, but rather clarified that "an employee's job title or employment responsibilities should [not] be considered outcome determinative." Id. at 434. Moreover, Plaintiff's reliance on Higgins is misplaced because Plaintiff is not merely a "co-employee;" he had a supervisory role, as he had authority to suspend the misbehaving employee. (Am. Compl. ¶ 29.)

This Court thus does not agree with Plaintiff that the holding in Lippman allows Plaintiff's claim to move forward. See, e.g. Tayoun v. Mooney, No. L-1897-07, 2012 WL 5273855 (N.J. Super Ct. App. Div. October 26, 2012) (holding no "whistle-blowing" activity where employee disclosed and objected to activities of his subordinates, where such disclosures and objections are a regular part of plaintiff's supervisory job responsibilities). However, Plaintiff has alleged that he alerted the Board of his subordinate's behavior, objected to his being immune from discipline, and requested that he be terminated, which request the Board did not support. Thereafter, Plaintiff suspended the employee. In light of Massarano and Lippman, this suspension may not be a "whistle-blowing" activity. Nonetheless, Plaintiff's objection to the Board refusing to discipline the employee is a "whistle-blowing" activity in that Plaintiff "object[ed] to…a policy or practice which the employee reasonably believes…is in violation of a law, or a rule or regulation promulgated pursuant to law." N.J. Stat. Ann. § 34:19-3(c). The Court will therefore deny Defendant's motion to dismiss on this count.[2]

---

[2] The Plaintiff suggests that this Court should withhold determination of the CEPA claim pending the New Jersey Supreme Court review of Lippman. (Pl.'s Br. 11.) However, because this Court finds that the objection of Plaintiff to the Board's actions of refusing to discipline the employee, upon which Lippman has no bearing, is distinct from his

16

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**, and Plaintiff's motion for leave to file an amended complaint is **GRANTED.**


Dated:  10/17/2014                                                  s/ Robert B. Kugler
                                                                              ROBERT B. KUGLER
                                                                              United States District Judge

---

suspension of his employee, which was part of his job duties, the Court will let the claim move forward without waiting for the New Jersey Supreme Court ruling.